May the court please. I am Brent Scott. I represent the appellant, plaintiff Mark Rome in this matter. Counsel? Yes, Your Honor. As I read through your brief and the record excerpts, I thought it was really possible that the judge erred on the credibility of the witness, the one that claimed that basically she'd been offered a kickback and she was mad because she didn't get it, and that the judge may well have erred on the reason for termination. It looked to me like maybe Rome and his boss just didn't get along. But even if I accept all that, it's hard for me to see that the errors are clear and I didn't see any witnesses, and it's also hard for me to see any reason to connect it up with age. You've got people in their 30s and 40s, not very far apart, and a guy in his 40s gets crosswise with his boss about a matter that really matters to the company, and then he gets fired. I'm having trouble tying it to what you have to tie it to, which is discrimination for a listed reason or retaliation that relates to a listed reason. Explain to me. Sure. I'd be glad to, Your Honor. Well, remembering, too, it's not summary judgment because obviously it got kicked back on that, and you got all the inferences there. Now they get all the inferences because it was a trial. I accept that challenge, Your Honor. As a civil rights attorney for almost 30 years, I believe I can show this court that this is a textbook case of age discrimination and retaliation. Age discrimination is very unique. It's not like race or gender discrimination that some people are – not everyone is subject to, but in age discrimination, if we reach the age of 40, what happens? We're all subject. Which we all are. We're all subject to discrimination. Some of us are even over 40. Get to the meat of what the evidence in this case will be. The meat in this case, Your Honor, Mr. Rome was 49 when he was terminated after 25 years of dedicated loyal service to this company. His superior, direct superior, Owens, was 36 years of age. There's a trend, and I believe we will – we showed this in the facts. There's a trend in some businesses to replace older, wiser employees with younger, cheaper employees. What a waste. This isn't a jury argument. I understand that. You've got to show a clear error in the findings of fact. Yes. But I wanted to put it in perspective to why I'm here, Your Honor. The question is, why should this be retried, and why have we requested a different judge? The facts are that Mr. Rome presented and proved, without rebuttal, a prima facie case of both age discrimination against GSK as well as retaliation. There was also evidence in this case, I believe, that clearly set forth that the trial judge became a partisan adjudicator in this matter. Let me address that. First, the age discrimination. There were two claims. Everything was merged into one action. Focus on the age discrimination. It's a big deal federally when a drug company does what he was accused of doing. So they have a drug company investigator who investigates it. Now, it may or may not have – the investigation may or may not have been good enough, and it may or may not have come to the right conclusion. But they thought he offered an illegal kickback that could get the company in trouble. That's what the judge found. I understand that, Your Honor. But long before that allegation of wrongdoing on the part of my client, my client alleged and proved, met the burden of proof against Malia Owens, that at least four of her younger, under the age members were given special training and promotions with no explanation for the merit of giving that to them in denial to my client. Did somebody else who was younger not get fired after one of these kickback findings? There was no one named. At least four witnesses testified that they knew of no one else being fired. Romanowski, one of the – Was there somebody else who had been similarly found guilty by the home office investigator of a wrongful kickback offer? No one knew of anybody other than the hearsay of Romanowski that he believed he had heard of somebody else being terminated for this violation. That was the only evidence, Your Honor. You evaded my question. I'm sorry, Your Honor. The way you would show age discrimination is you'd show young people did the same thing, and they didn't get fired. And so I was asking you, was there evidence of young people who did the same thing and they weren't fired? And the same thing means a home office finding that they offered an illegal kickback. What I'm saying, Your Honor, there's two different claims. Age discrimination, the retaliation dealt with the alleged grants violation. The discrimination dealt with the fact that he had been denied promotions ten times, and the HR, when he filed a claim for that, never conducted any investigation as to as far as his reason for hiring individuals under the age and giving preferential treatment without giving any reference checks and why GSK required Rome to put down his age, ethnicity, and gender on that application. Yes, the policy that he was alleged to have violated, what was it? That he was not supposed to make promises of grants to clients? To customers, Your Honor. To customers. Well, was Richards a customer? She was an independent contractor. She sat on one of the committees of LAVITA. She was not a customer based on the record. She admitted she was an independent contractor, had no power to enter into contracts or do anything on behalf of LAVITA. On its face, it doesn't seem that he violated the grants. Absolutely, Your Honor. Because she wasn't, and the policy talked about customers, and this Richards, who claims for whatever reason that she didn't, that she was promised something, and didn't get it, wasn't a customer. Yes. The customer, if anybody, was Ms. Gallucci, the administrator for LAVITA, who didn't recall any promises or any amounts and merely had some misunderstandings, she believed, with Mr. Rome. So the other thing that troubled me, which ended up in the district court's findings, in fact, was that there were problems with your client's work. Yet, in fact, she says that she had to spend a considerable amount of time working with him to try to get him to meet medical group sales representative standards. But he was the top performer in 2002 and 2003, wasn't he? He was the top performer, Your Honor. He repeatedly performed. He had 24 years of dedicated, documented personnel records and performance records. He was recommended for promotion by Greg Dial in 1999, the year before Malia Owens took over. This man was graded below average, average or below average, by Malia Owens. That is evidence of pretext. The process stated in the district court found that he didn't know what the policy was, yet he had just taken a compliance exam and gotten 100 percent. So he had to have known what the policy was. He took the policy twice. He scored 100 percent. He had been with the company for 25 years. He knew the policy. He knew that you couldn't promise grants. So I'm just pointing out instances, which maybe I'm just suggesting you might have pointed out to Judge Kleinfeld, where he asked you what did the district court do that was clearly erroneous. Oh, yes. I'll be glad to, Your Honor. Regarding the issue of pretext and retaliation, the only evidence after the prima facie case of retaliation, the only evidence the defense offered was the fact that Rome allegedly violated the policy. The pretext, we have over 20 reasons cited in the records to show pretext. First of all, Owens relied on triple hearsay to render an opinion. GSK conducted no investigation whatsoever. The only person they talked to was Richards, right? The only person Malia Owens talked to was Richards. Rajaratnam, none of the HR, no one at management ever verified anything from Gallucci, Miller, Richards, or even Rome. They can rely on hearsay, not a court. Well, they can rely on it if they have a policy that says they have to investigate. The problem that I have with your retaliation claim is it looks as though he knows he's in a lot of trouble for violating the policy, whether it really is the policy or he really violated it or not.  But if he files a complaint alleging a protected ground of discrimination, then it may screen him from discipline because it would look like retaliation. It's sort of instead of the firing being pretextual, the complaint looks like it's pretextual. Your Honor, when he went with Malia Owens, he denied that he ever made any promises. He had no idea they were going to come after him and terminate him. GSK had five alternative progressive disciplines. They chose the harshest discipline, even though HR, Stellings, recommended an alternative. Malia Owens, Romanowski, and Stellings all knew about Rome's claim of age discrimination against Malia Owens, and yet they were allowed to sit as biased decision makers. Well, you're making really good arguments. Thank you, Your Honor. And maybe I would have ruled the other way, but they did raise some points that, you know, we have to also look at what would have supported the judge going the other way. And what Judge Kleinfeld is saying, the judge could have heard everyone, and he heard from your client, he heard from all these people, and could have felt that your client was, you know, that he was hedging his bets. It's not unheard of that people go, you know, the first thing, like, well, you fired me because I'm a woman, or you fired me because I'm Hispanic. I'm just using those because I am. The fact that I'm incompetent couldn't have had anything to do with it. I mean, a court in a trial is listening to all of those things and deciding what the court believes. I agree with that, Your Honor, except for the fact there was not, on the key issues of evidence, there was no substantial evidence by this trial judge to support his findings of why Rome was not, was denied promotions or given the opportunities for the jobs with his partner. Well, there was, okay, I have to say that there was in the record, I'm going to have to say, you know, I'm not saying that there was on everything, but I remember one thing in the record that he didn't get something at the HIV clinic because they felt that he really wasn't interested in that. He didn't have a science background. And, you know, it's true, he's got more degrees than most of us and some that some of us all have. But, you know, but that doesn't mean that the person is necessarily right for every job that they apply for. I understand that, Your Honor. So that reason was there. I mean, that doesn't seem, if you don't care about people that have HIV or you don't have any real passion about that and you don't know much about science, you might not be the right person for that job, even though you have a J.D., a Ph.D., a Master's, and a B.A., and all of those things. I understand. At trial, as far as Mr. Esparza had, the resumes, qualifications, and education of every individual he hired, that was not submitted into evidence. I think the judge thought that this fellow, Rome, had puffed his resume along. He said that there were great, well, let me address that, Your Honor. He's the judge. He's the judge. This is what the judge said. There were a few correct rulings. His correct rulings included there were imperfections in the decision-making process by GSK. Richards was the poorest witness he had ever heard on the stand in over ten years. He believed her. But he still thought she was credible for Owens to believe. And he's the judge. He thought she was a terrible witness, but he still wound up believing her. See, your argument seems to be boiling down to the judge was biased in some way. I mean, unless you can show that his findings were clearly erroneous, we can't reverse, even though I personally think on this record, you know, if I had been the trial judge, I would have gone the other way. But we have to – I mean, we can't reverse a judge unless his findings were – I understand. Two crucial points. There was evidence. The judge heard that Malia Owens, and he even examined Malia Owens on the stand. There was evidence that she never communicated to anyone her decision to terminate Rome until after she found out about the claim of discrimination against her. You know, that claim really bothers me. It seems to me, suppose I run a candy store, and my clerk isn't handling the register properly. I don't know what her problem is, but things are never right. So I say, Blanche, be more careful on the cash register. Something's not right here. I don't know what it is. And then a few weeks later, I realize she's maybe borrowing a little from the cash register. I say, Blanche, you know, I cannot have that. I don't know for sure what's happening, but the register's not coming out right. And then a couple weeks after that, I realize she stole from the cash register. And she realizes that I realize. So what she does is, that morning before I get into the candy store, she leaves a letter on the desk saying, I believe you discriminated against me on the basis of my sex, and that's why you didn't promote me to store manager. Now, even though I get in a half hour later and I say, Blanche, you stole from the register. You're fired. She says, uh-uh-uh, that's retaliation because you fired me right after I filed a complaint alleging sex discrimination. It seems to me that that's your retaliation case. Well, my retaliation case, Your Honor, I would differ slightly, is the fact that not only federal law, your federal law, this Ninth Circuit and the Trichler case, as well as the policy of GSK required a mandatory investigation of these serious claims. There was no investigation of Rome's claims against Owens for discrimination by HR. There was no investigation by Raja Ratnam, the compliance officer, of Rome's allegations of Richards against Rome. The California Supreme Court in Cotrans set forth the standard and guidelines required to satisfy that requirement of investigation for misconduct. Clearly, that standard was never closely filed. My client never even got a chance to respond to the accusers and was given the harshest punishment possible after 25 years of employment with the company. I believe, Your Honor, that that shows the pretext that the GlaxoSmithKline disregarded the law of their own policies and merely ratified, with conscious disregard for Rome's rights, his rights to continue on as an employee. And even the judge acknowledged that there may not have been evidence of any violation. Miller was never contacted. He was the most credible witness at trial. Counsel, you are way over time. I respectfully request this Court to remand this matter back for trial with a different judge because I believe the judge became partisan, examined, and actually led witnesses on the witness stand to get the answers he wanted to justify his verdict. Thank you so much. Thank you, counsel. Good morning, Your Honors. Claudette Wilson of Wilson Turner Cosmo on behalf of SmithKline Beecham, doing business as GlaxoSmithKline and referred to mostly in the record as GSK, and I will refer to them that way as well. Meryl Maneker is here with me. She was the other trial counsel in the case. I do want to address some of the questions that you've raised and then try to give you my argument as to why we think the judge was actually clearly right and very much not clearly erroneous. What evidence was there that the reason why he didn't get the promotions and transfers he wanted was something other than age? Was something other than age? Correct. Okay. With regard to promotions, there was a massive amount of evidence. If I understand it right, he's saying I was discriminated against because of my age. So for the judge to be right in saying, no, you weren't, there has to be some evidence from which the judge could have reached his conclusion. Say what it is. The first point is there was no evidence that it was because of age. Was there evidence that he was turned down for some other reason? Yes. And let's use the SPARSA issue as an example. Maybe say what it is. Which is the HIV position that he applied for, and I think it was Judge Wardlaw who had. . . I was throwing you a softball here. I was just hoping to summarize. Sorry. Judge Callahan. Judge Callahan. That he. . . It's two sides of the same coin. If he's saying it's clearly erroneous, what you need to do is point us to that there was evidence in the record that supported what the judge did, and you're entitled to all inferences in favor of the verdict. That's. . . And I think what you can sense here is that, you know, maybe some of the panel members don't think that this had much heart, and that they went to, you know, from 0 to 60 in 2 seconds, and they were, you know, they were extremely harsh against him. But we're not here to retry the case. But there's got to be. . . The trial judge still has to have something to hang his or her hat on. Okay. There's several issues in the case. And I'll address the one of why didn't he get the various promotions. And the one that's on appeal is the Esparza promotion to the HIV department, where Esparza did not select him. Esparza and Mr. Scott has indicated in his record that there was no evidence put in as to why he didn't select him. But Mr. Esparza gave very complete testimony as to why he didn't select him, which was he didn't have the science background necessary. The HIV position was a very science-intensive position because the science is constantly developing. You have to be on top of it. You have to have a strong interest in it. And did they pick somebody with more of a science background? Yes, they did. They picked Krista Robb, who was somebody who had many sales awards, winner's circle 2000, 2001, level of excellence. I asked you about science background, and you're talking about. . . Okay. I'll just give you all her credentials. Well, treat me like your secretary. And I'm your secretary. And I'm asking, why wasn't this guy promoted or transferred like he wanted? He's saying it was his age. Was there some other reason? Tell me in English. She had a minor in biology. She had strong communication skills, and she lived in the sales territory. As I established. . . How old was she? Excuse me? How old was she? I don't know what her age is. Wouldn't that be relevant? Well, I know she was under 40. But we went through all the positions at trial that he had applied for and didn't receive. And many of those which are not here on appeal, people older than him received those positions. That's why they're not on appeal. But here the issue was, I mean, Mr. Scott has to prove that it was because of age. All right. Well, then, you know, I don't want to do your job for you. But if we're saying what. . . If there were other positions where older people got them, then that's evidence that it wasn't just because this person was younger. That's all. . . Those are the things we're asking you in the record. That's right. All right. And that's your responsibility. Okay. Well, as to the other positions that have not been brought up on appeal, the positions were given to several people. . . There were at least three people who received the positions who were over 40. So there was not a consistent trend that it was only people under 40 who were getting these promotions. And with regard to the HIV position, it was very clear you needed to have the science background. Mr. Rome had one biology class as an undergraduate. The candidate who got it had a minor in biology and lived in the territory, which was actually a major consideration in addition to the science background. All right. Well, I'm most concerned with, I guess, whether this issue of violation of the grants policy was mere pretext for firing him after he filed his claim against Ms. Owens. And the reason that concerns me is, well, there's a number of reasons. But he was, despite the testimony that he was a poor performer and all of that, he actually was the highest salesperson in 2002-2003. Owens was very critical of him all the time. I can envision a situation where maybe someone in his generation, like me, would be less computer literate and less able to produce the reports and all that stuff. But that has to do with age. What is the grant 6.3, the grant policy? What does it say that he was alleged to have violated? You cannot promise a grant to a customer before it is processed by the grant department. Okay. Was Mrs. Richards a customer? Yes. And, I mean, in what way? I thought she was an independent contractor. She was an independent contractor who worked for Levita. She was a doctor herself, and Levita was a customer, the medical group was a customer, and Dr. Richards was a customer. A customer is defined as somebody who uses GSK products. Right, but she was an independent contractor with the customer. And she was independently herself a customer. And that's she began to give you a definition. Was there evidence of that? Was there evidence of that in the record? I didn't see that. That she was a, yes, she was a thought leader for GSK. She was somebody who spoke for them quite a bit, and she was an allergist. But that's not a customer. Yeah, a customer is somebody who buys GSK products, and I can read you the definition from the grant policy. The question is what is the evidence that Mrs. Richards was even a customer in the record? That she was a doctor who prescribed GSK products. That makes her a GSK customer for purposes of the grant policy. As I understand it, ordinarily the doctors do not actually buy anything from the pharmaceutical companies. What they do is get free samples and promotion from the pharmaceutical companies and then write prescriptions for their patients, and their patients buy the pharmaceutical products at the pharmacy. Is that what we're talking about here? That's correct. And the definition of a customer in the grant policy at tab 9A is any individual or entity that prescribes, recommends, or refers patients for GSK products. So a prescriber is a customer even if they don't buy anything? Yes. And just to put that in context, what they're trying to avoid is any federal regulator thinking that they're paying off doctors. So they have to be expansive in terms of who they're interacting with. So, no, there was never a question at trial that she was a customer. And, in fact, Mr. Rome referred to her as a customer at tab 38 when he sent the e-mail saying, we had this great dinner, they want to do all these things with us, and we had dinner with two very influential customers. So he thought of them as customers. Everyone thought of them as customers. All right. So let's get over that. Okay. Then the next problem that I have is that we know Owens, and he didn't really get along. He felt, according to his assessment, that she was treating him worse because he was older. And he files a complaint. And Owens knew of the complaint when she recommended his termination. And she recommended his termination on the basis of Richards calling and being upset that she didn't get as much grant money as she allegedly had been promised. But neither Owens or the person who ultimately fired him ever talked to Miller or Gallucci, the other people who were at the dinner, to see whether, in fact, that was true. So you had Richards' word versus Rome's word on that, and no further investigation. To me, that would undermine the credibility of the reason for the termination. Well, let me address that. She talked to both Dr. Richards and Nikki Gallucci. So she talked to two of the people, the two customers who were at the dinner. Nikki Gallucci didn't remember. She didn't. She remembered that she had talked to someone. She didn't remember whether or not promises had been made at the dinner, but she did remember that she had submitted grants for $8,000 that she thought she was going to get, that she was led to believe, and this was her testimony, that she was going to get, and then she was befuddled when she got $2,500 for each instead. By Rome, did she allege that? By Rome? Nikki Gallucci testified that on the stand. Was that the basis for his termination? No. The basis for his termination was that Dr. Richards made the complaint. Nikki Gallucci backed it up and said, yes, he was completely confused, and he did offer to pay food over the grant amount, which is completely prohibited because it's a way of getting around the grant rules. So there was that, and then when the key fact, though, is when Malia Owens followed up with him and counseled him on this grant violation, he admitted that he had promised the grant. Now, Malia Owens testified to that. She was a very credible witness, and Rome's own words confirm that, which is in the field coaching report, which is at tab 11H. He says, he writes, make no promises anymore. Now, when did that happen in relation to his filing the complaint? The day before. The day before? Yes. So then he filed his complaint. That's right. And then he was fired a month later. Correct. So we have the situation here. I mean, we have a very irate customer calling and saying, he promised me this money and we didn't get it, we're mad, and the company's mad and we never want to work with him again, and we're reconsidering our relationship with you guys. Then you have Rome, who at first, from Malia Owens' notes, is waffling a little bit but admits that he did offer to pay for the food. That is absolute. Then she meets with him again. He acknowledges, yes, he did promise the grant, and he's sorry about that, and he says, I won't do it anymore. So that's kind of critical evidence that that's the point at which Malia Owens said, he's in trouble, he's violated the grant policy. This is very serious at a pharmaceutical company, as you can imagine. And that information gets conveyed, and that's the basis upon which the termination decision is made. And there's no evidence that anyone considered his age in making the termination decision. I mean, Greg Romanowski was the one tasked with the decision as the regional vice president. He looked at the fact that the grant promise had been found. He didn't know, he wasn't even aware of Rome's age. He wasn't aware there was an age discrimination complaint. He knew that in response to being counseled, there had been some sort of harassment complaint, but his testimony was he never understood that to be an age discrimination complaint. Malia Owens never understood it was an age discrimination complaint, and I can give you the references to their testimony on that. And Carrie Stellings in the Human Resources Department was adamant in her deposition, which was the testimony that was taken in at trial, that she didn't understand it was a discrimination complaint. There's like two words in the whole, you know, write-up of his complaint, which were his own interpretation that because he made so much money, he thought maybe she wanted to replace him with someone younger. That was his own interpretation, not something she ever said to him. Now, you had expressed a concern that was it fair how she was, you know, responding to his performance. She hired him into her group when he was 46 or 47. So it wasn't that she was saying, I don't want any, you know, of those old 40 people. Did she hire him, or was he already in the group and then she came? No, no. She formed her, she was put in charge of forming a group. She did all the interviews with the people. She interviewed Rome and hired him into her group. Now, once she hired him into her group, she started seeing the performance problems, and Rome acknowledged the performance problems. I mean, he acknowledged that he was having problems with, it was a different position than he had had before, and he was having problems working with the other folks that he had to work with in order to coordinate, because they had to coordinate since they were representing, or they were working with medical groups, so all the different sort of drug representatives had to coordinate with them, and he was having difficulty with that. He was having a lot of difficulty with the computer issues, and he acknowledged that he was not a good fit for that department, and he needed to leave. That was his own testimony. Yeah, that's part of his complaint, is that he knew he needed to leave. She knew he needed to leave the group and go to a different group, but he says that her negative reviews of him prevented him from being able to leave. But there's no evidence, and this is one of the concerns I have in both in Appellant's interpretation of the record. There is absolutely no evidence that she ever maligned him to anyone or that anyone ever asked her for a reference. That is nowhere in the trial. That didn't happen. But she said something, I wouldn't be comfortable recommending you? She, well, she said in response to her question, I wouldn't be comfortable recommending him if somebody had asked me. I wouldn't recommend him for a position because I didn't think he was a good employee. That was – she didn't think his performance was good. But she was never asked for it. She never undermined him in his efforts to get any other position. And I do want to go back to the Esparza issue because I think that's a critical one, and I think that's been completely misrepresented. There was no – there was – there's this effort to say that the application required you to put your age on it. There's no evidence of that. Absolutely none. Esparza's testimony was that he had – there was a document put into evidence which is what – that showed the positions that Mr. Roman had. And it had a template on it for EEO information. It was not filled out, but it was in that document. So he kept asking witnesses if they had seen it, and he asked Mr. Esparza, did you see this? And Mr. Esparza said, no, I've never seen that before. That's some internal document. There was nothing. He wasn't getting age information about the people who were applying in front of him. Counsel, you are well over time. Oops. So you want to wind it up. Okay. I'll wind it up. The standard is not the Cotrans standard. The standard is the GUS standard. And under the GUS standard, even if our reason was not good or no one likes it, as long as it wasn't because of age, he has to prove, he has the burden of proof to show it's because of age. And there's nothing to show that the decision-makers or even the people who recommended it made the decision based on age. They based the decision on the fact that they thought he had violated the grants policy. Thank you, counsel. That was terminable. Thank you, Your Honor. Rome v. GlaxoSmithKline is submitted. Do you mind? Just 30 seconds. Really hold you to it. Use it well. Okay. The testimony at trial by at least four witnesses, including Owens, was that Rome was an honest person and never lied to them. The defendant merely claimed that there was no need for an investigation but gave no reason why. They relied strictly on Owens. Miller was a Marine. He was never interviewed by Owens. It wasn't her duty. But he gave the most credible testimony at trial. Even the judge tried to confront him. He said no promises were ever made, never, never. He would have reported my client. Richards never bought a thing from Rome or GSK, but biased decision-makers were allowed to terminate my client without investigation. If the violation was so serious, why was GSK never investigated, cited, or why did they continue working for Levita? Thank you, counsel. Thank you very much. Rome v. SmithKline Beacham Corporation is submitted. United States v. Pounds is submitted. We are adjourned for the day. All rise for the session's conclusion.
judges: Kleinfeld, Wardlaw, Callahan